UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

CHAMBERS OF
THE HONORABLE GINA L. SIMMS
UNITED STATES MAGISTRATE JUDGE



6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770

August 11, 2022

LETTER TO COUNSEL

RE:  *Seth Jaye C. v. Kijakazi, Acting Commissioner of Social Security*
    Civil No. GLS 20-2594

Dear Counsel:

Pending before this Court are cross-motions for summary judgment, filed by Plaintiff Seth Jaye C., and the Social Security Administration. (ECF Nos. 21, 22). The Plaintiff has also filed a reply brief. (ECF No. 25). Upon review of the pleadings and the record, the Court finds that no hearing is necessary. *See* Local Rule 105.6. (D. Md. 2021).

The Court must uphold the decision of the Social Security Administration ("SSA" or "the Agency") if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence rule "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig*, 76 F.3d at 589. This Court shall not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the SSA. *Id.* For the reasons set forth below, I will deny the motions, reverse the Commissioner's decision in part, and remand the case back to the SSA for further consideration.

I.  **BACKGROUND**

Plaintiff filed a Title II Application for Disability Insurance Benefits and a Title XVI Application for supplemental security income on February 3, 2017, alleging that disability began on November 15, 2003. (Tr. 148). These claims were initially denied on May 25, 2017, and upon reconsideration, denied again on October 26, 2017. (*Id.*). On December 19, 2017, Plaintiff filed a written request for a hearing, which was granted. The hearing was conducted on June 25, 2019 by an Administrative Law Judge ("ALJ"). (*Id.*). On October 1, 2019, the ALJ found that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (Tr. 150-162). On August 13, 2020, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final and reviewable decision of the SSA. (Tr. 168). *See also* 20 C.F.R. §422.210(a).

*Seth Jaye C. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS 20-2594
August 11, 2022
Page 2

## II.     ANALYSIS PERFORMED BY THE ADMINISTRATIVE LAW JUDGE

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is deemed to have a disability if his/her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work . . . which exists in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

To determine whether a person has a disability, the ALJ engages in the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a); 416.920(a). *See e.g., Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003); *Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015). The steps used by the ALJ are as follows: step one, assess whether a claimant has engaged in substantial gainful activity since the alleged disability onset date; step two, determine whether a claimant's impairments meet the severity and durations requirements found in the regulations; step three, ascertain whether a claimant's medical impairment meets or equals an impairment listed in the regulations ("the Listings"). If the first three steps are not conclusive, i.e., a claimant's impairment is severe but does not meet one or more of the Listings, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC"). A claimant's RFC is the most that a claimant could do despite her/his limitations, through consideration of claimant's "'medically determinable impairments of which [the ALJ is] aware,' including those not labeled severe at step two." *Mascio*, 780 F.3d at 635 (quoting 20 C.F.R. § 416.945(a)). Also at step four, the ALJ analyzes whether a claimant could perform past work, given the limitations caused by her/his impairments. Finally, at step five, the ALJ analyzes whether a claimant could perform jobs other than what the claimant performed in the past, and whether such jobs exist in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i) - 404.1520(a)(4)(v).

At steps one through four, it is the claimant's burden to show that he is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Monroe v. Colvin*, 826 F.3d 176, 179-80 (4th Cir. 2016). If the ALJ's evaluation moves to step five, the burden then shifts to the SSA to prove that a claimant has the ability to perform work and, therefore, is not disabled. *Hunter v. Sullivan*, 993 F.3d 31, 35 (4th Cir. 1992).

Here, the ALJ evaluated Plaintiff's claim by following the sequential evaluation process outlined above. (Tr. 150-161). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from November 15, 2003, the alleged onset date of Plaintiff's disability, through March 31, 2004, his date last insured. (Tr. 150). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: attention deficit hyperactivity disorder (ADHD), bipolar disorder, vertical fracture of the right scapula, and disruption of the right coracohumeral ligament. (Tr. 153). The ALJ found these impairments were severe because these impairments

significantly limit the Plaintiff's ability to perform basic work activities as required by SSR 85-28. (*Id*.). However, at step three the ALJ also determined that none of Plaintiff's impairments or combination of impairments met or medically equaled one or more of the Listings. (Tr. 153-154). Taking into account Plaintiff's severe impairments, the ALJ next assessed the claimant's RFC. Despite Plaintiff's severe impairments, the ALJ determined that Plaintiff had the RFC to:

> lift, carry, push, pull up to 20 pounds occasionally and 10 pounds frequently; sit for a total of up to 6 hours a day; and stand and/or walk for a total of up to 6 hours a day. He can never climb ladders, ropes, or scaffolds, but frequently climb ramps and stairs. He can frequently balance, stoop, crouch, kneel, and crawl. He can do frequent reaching overhead, in front, and laterally with the right upper extremity. (The claimant is ambidextrous.) He is able to understand, remember, and carry out short, simple, routine instructions; to sustain attention and concentration for 2-hour periods at a time and for 8 hours in the work day on such instructions; and to use judgment in making work decisions related to such instructions. He requires an occupation with set routine, procedures, and instructions; and few changes during the work day. He requires an occupation with only occasional coworker contact and supervision. He requires an occupation where there is only occasional contact with the public, on routine matters. He can do work with below average work production pressures; can maintain regular attendance and be punctual within customary tolerances; and can perform activities within a schedule. He needs to avoid all exposure to vibration and all exposure to hazards (such as dangerous machinery and unprotected heights).

(Tr. 154). At step four, the ALJ found that Plaintiff does not have any past relevant work because his prior work as a warehouse worker was not substantial. (Tr. 83, 160).

Before making a finding regarding step five, the ALJ conducted a hearing. At that hearing, the ALJ posed three detailed hypothetical questions to a vocational expert ("VE"). The first question largely mirrored the language ultimately used in the RFC; the sole difference was that the individual could only occasionally reach overhead rather than frequently reach over his head. (Tr. 83-84). In response to that hypothetical, the VE testified that a person with this limitation could not do the past work that Plaintiff performed, nor were there jobs that existed in significant numbers in the national economy that he could perform. (Tr. 84). The second hypothetical largely mirrored the first question, except that it was modified so that it involved frequent reaching overhead (not occasional). The VE testified that this hypothetical individual would not be able to perform Plaintiff's past work, however, the person could work as a photocopying machine operator, garment sorter, and housekeeper/cleaner. (Tr. 85-86). The third and final question posed involved an individual who was absent from work one or more days a week, all other aspects of the hypothetical were the same as before. The colloquy was as follows:

>   ALJ: Do you have an opinion as to whether such an individual could perform the past work?
>
>   VE: No to past work.
>
>   ALJ: Are there any other jobs such an individual's (sic) capable of performing?
>
>   VE: There would not be.
>
>   ALJ: All right. Is your testimony consistent with the Dictionary of Occupational Titles?
>
>   VE: It has been. Although the DOT does not cover the attention, concentration, the supervision, the attendance in the schedule, the production, and it doesn't cover just the use of one upper extremity as you had described it in your hypothetical number one nor does it cover the overhead reaching or the absences. And I am answering those questions based on my professional experience, research and education.

(Tr. 86).

Regarding step five, then, the ALJ opined that "based on the testimony of the vocational expert," namely "considering the Plaintiff's "age, education, work experience, and [RFC]," Plaintiff was not disabled. Plaintiff was "capable of making a successful adjustment to work existing in significant numbers in the national economy," e.g., Plaintiff could work as a photocopying machine operator, garment sorter, or a housekeeper/cleaner. (Tr. 161).

### III. DISCUSSION

In requesting summary judgment, Plaintiff contends that the ALJ's step-five determination is not supported by substantial evidence because the hypothetical posed to the VE at step four was inadequate. (ECF No. 21-1, "Plaintiff's Mem.- SJ," pp. 9-14). Specifically, Plaintiff asserts that his RFC ultimately included a hypothetical limitation that was posed to the VE that Plaintiff could perform work "with below average work production pressures,"—a phrase that was not defined in the Social Security regulations nor in the DOT, and is subject to multiple interpretations. (*Id.* at 12). According to the Plaintiff, then, the VE could not possibly have understood the limitation nor reasonably concluded that Plaintiff had the capacity to perform work existing in the national economy. (*Id.* at 14). Thus, remand is required. (*Id.*). Plaintiff relies principally on *Thomas v. Berryhill*, 916 F.3d 307 (4th Cir. 2019) to support his arguments.

The Agency counters that Plaintiff speculates that the VE did not understand the phrase

*Seth Jaye C. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS 20-2594
August 11, 2022
Page 5

"with below average work production pressures," and that the term "production pressures," is widely used by ALJs and medical sources, and is not confusing. (ECF No. 22-1, "Defendants' Mem.- SJ," pp. 7-10). The Defendant further avers that "below average" and "production pressure" are commonly-used phrases that do not require further elaboration, and that there have been several district court cases with similar phrases who have so held. Thus, remand is not required. (*Id.* at 8-11).

I have carefully reviewed the arguments and the record. I find persuasive Plaintiff's argument that the ALJ's failure to define the phrase "below average work production pressures" for the VE or in his opinion frustrates meaningful review by this Court. Accordingly, I find that remand is appropriate, for the reasons set forth herein.

I find *Thomas v. Berryhill*, *supra*, instructive. In *Thomas,* the ALJ denied the claimant's application for SSI. The claimant argued, *inter alia*, that the ALJ erred in evaluating claimant's RFC. *Thomas, supra*, at 311. The Fourth Circuit found that there were several missteps in the ALJ's RFC evaluation. Of particular relevance here, is the Fourth Circuit's holding that the ALJ's failure to define "production rate or demand pace" made the ALJ's RFC assessment flawed, because without such a definition, the appellate court could not meaningfully review the ALJ's decision. *Id.* at 311-12. *Onuche S. v. Saul*, TMD 19-3399, 2021 WL 1060358 (D. Md. March 19, 2021), is also instructive. In *Onuche S*, the ALJ included a limitation of "below average work production pressures" in the RFC and hypothetical question posed to the VE. The ALJ did not define this phrase. The court found that the ALJ failed to provide sufficient information to enable the court to understand the phrase's meaning, which made it difficult to assess whether the phrase's inclusion in the RFC was supported by substantial evidence. 2021 WL 1060358, at *4.

In this case, Plaintiff correctly casts the issue as one involving a flawed hypothetical to the VE and a defect in the RFC assessment, as the hypothetical posed contained the ALJ's RFC assessment of Plaintiff. The hypotheticals posed to the VE included the phrase "below average work production pressures," however, the ALJ failed to define what this meant. (Tr. 84-86). It is unclear from the colloquy at the hearing that the VE understood the phrase "below average work production pressures" as the ALJ intended it be construed. Indeed, the VE never mentioned this phrase. (Tr. 86). Regardless of whether the VE expressed confusion about the hypotheticals posed, I have an "independent duty to determine if the ALJ supported [his] findings with substantial evidence." *Taishika C. v. Saul*, Civ. NO. DLB 19-1994, 2020 WL 2994487, at *3 (D. Md. June 4, 2020)(quotation omitted).

In addition, at no point in the ALJ's decision did he mention the phrase, nor did explain what he meant by including the "below average work production pressures" limitation in Plaintiff's RFC. (Tr. 153-160). Thus, the Court is unable to glean from the record what the ALJ meant by using this term. Without an explanation, I do not understand how the ALJ determined Plaintiff's ability to perform work on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week). Accordingly, remand is warranted so that the ALJ can clarify both this limitation in Plaintiff's RFC and the related hypothetical posed to the VE, such that one can infer that substantial evidence

exists to support the ALJ's ultimate finding on non-disability. *See Onuche S*, 2021 WL 1060358, at *4.

Defendant maintains that there was no error, relying on a case that predated *Thomas*, and upon cases that had the phrase "below average" and "production pressure." (Defendants' Mem.-SJ," pp. 7-10). None of these out-of-district cases had the exact phrase "below average production pressures;" thus, they are inapposite.

### IV.   CONCLUSION

For the reasons set forth above, both parties' summary judgment motions (ECF Nos. 21, 22) are **DENIED**. Plaintiff's alternative motion to remand this case is **GRANTED**. In addition, consistent with sentence four of 42 U.S.C. § 405(g), the Agency's judgment is **REVERSED IN PART** and the case is **REMANDED** for further proceedings consistent with this opinion. I express no opinion as to whether the ALJ's ultimate finding that Plaintiff is not disabled and not entitled to benefits is correct. The Clerk of the Court is directed to **CLOSE** this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as such.

A separate Order follows.


Sincerely,


/s/
The Honorable Gina L. Simms
United States Magistrate Judge